## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **JOHN P. POLCASTRO, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.  1:05-cv-00909-MEF-VPM** |
| ) | |
| **GREG WARD, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### <u>DEFENDANTS' SPECIAL REPORT</u>

COME NOW Sheriff Greg Ward, Carl Rowe, Donald Weeks, and Ray Mock, Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

### INTRODUCTION

Plaintiff in this action, John P. Polcastro, hereinafter "Plaintiff," filed his Complaint in the United States District Court for the Middle District of Alabama on September 23, 2005.  On September 29, 2005, this Court entered an Order instructing Defendants to file a Special Report addressing Plaintiff's claims.  On November 8, 2005, this Court granted Defendants' Motion for Extension of time, allowing Defendants until November 29, 2005, to file their Special Report and Answer.

The Plaintiff was arrested by the Sampson Police Department on August 1, 2005. (Exhibit A, Inmate File of John Phillip Polcastro, "Inmate File," Arrest Report dated August 1, 2005.)  He was charged with Public Intoxication, Arson in the Second Degree, two counts of Criminal Mischief, Disorderly Conduct, Resisting Arrest, and two counts of Convicted Felony. (Exhibit B, Inmate File, Booking Sheet dated August 1, 2005.)  He was also charged with Assault in the Third Degree for assaulting Deputy Sheriff Ray Mock.  (Exhibit C, Affidavit of Ray Mock, "Mock aff.," ¶ 21; Exhibit D, Inmate File, Prison's Activity Sheet, Notes dated

August 2, 2005.)  He was booked into the Geneva County Detention Facility on August 2, 2005, and is currently incarcerated there.  (Ex B.)  On August 23, 2005, he was served with an additional warrant for the charge of Theft of Property in the Second Degree.  (Ex. D, Notes dated August 23, 2005.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was refused medical treatment; that he was assaulted, that money was stolen from him; that he was threatened; that the condition of the jail is unsafe; that the jail food is inadequate; that he is denied outside exercise; that the jail is unclean; that he has been denied access to courts.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Ex. C, Mock aff. ¶ 3; Exhibit E, Affidavit of Sheriff Greg Ward, "Ward aff." ¶ 4; Exhibit F, Affidavit of Carl Rowe, "Rowe aff." ¶ 4; Exhibit G, Affidavit of Donald Weeks, "Weeks aff." ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.  FACTS

### A.    Excessive Force Claim

It is the policy of the Geneva County Sheriff's Department that only the minimal amount of force necessary will be used on an arrestee or inmate.  (Ex. E, Ward aff. ¶ 14; Ex. F, Rowe aff. ¶ 17.)

On August 1, 2005, Deputy Mock was dispatched by 911 to assist the Samson Police Department on Washington Street in Samson, Alabama.  (Ex. C, Mock aff. ¶ 4.)  Upon arrival Mock saw a white male in the back of the Samson Police Department car that Mock later learned to be the Plaintiff, John Philip Polcastro.  (Ex. C, Mock aff. ¶ 5.)  The left side window of the Police car had been knocked out.  The Samson Police informed Mock that Plaintiff had kicked the window out.  (Ex. C, Mock aff. ¶ 6.)  Plaintiff was cursing and yelling and appeared to be bleeding.  His hands were handcuffed behind his back, and his legs were tied with a strap.  (Ex. C, Mock aff. ¶ 7.)  The Samson Police informed Mock that Plaintiff had tried to set fire to a house by lighting a fire with gasoline at the natural gas unit that led into the trailer.  (Ex. C, Mock aff. ¶ 8.)  Mock told the Samson Police that he would transport Plaintiff to the Geneva County Detention Facility for them.  (Ex. C, Mock aff. ¶ 9.)  At that point, Plaintiff seemed to have calmed down, so Mock asked the Samson Police to remove the straps from his legs.  (Ex. C, Mock aff. ¶ 10.)  However, about one mile out of Samson, Plaintiff started kicking his window.  Therefore Mock pulled over into the Samson Armory Parking lot.  (Ex. C, Mock aff. ¶ 11.)  Deputy Mock located some leg cuffs to put on the Plaintiff, but before Mock could get them on, the Plaintiff had kicked out the right back window of his Sheriff's Department vehicle.  (Ex. C, Mock aff. ¶ 12.)

When Deputy Mock and the Plaintiff arrived at the Geneva County Detention Facility, Mock brought Plaintiff in the booking room and removed the cuffs. However, Plaintiff was still being very hostile and belligerent. (Ex. C, Mock aff. ¶ 13.) The jailer on duty told Plaintiff to go into the holding cell, but Plaintiff refused. Plaintiff put him hands on Mock and pushed Mock and began to try to hit him. Therefore, Mock pushed the Plaintiff off of him. Plaintiff hit the wall knocking himself out. (Ex. C, Mock aff. ¶ 14.) Deputy Mock followed the policy and procedures of the Geneva County Sheriff's Department and used only the minimal amount of force necessary to protect himself from the assault committed against Mock by Plaintiff. (Ex. C, Mock aff. ¶¶ 17 and 18.) Plaintiff was charged with assault in the third degree for his assault on Deputy Mock. (Ex. C, Mock aff. ¶ 21.)

**B.     Claim that Money was Stolen**

Defendants were never in the possession of any cash money that was allegedly taken from Plaintiff's home. (Ex. C, Mock aff. ¶ 20; Ex. E, Ward aff. ¶ 13; Ex. F, Rowe aff. ¶ 20; Ex. G, Weeks aff. ¶ 7.) When Deputy Mock arrived at Plaintiff's house, the Plaintiff was already handcuffed and in a police car. (Ex. C, Mock aff. ¶¶ 5 and 7.) The other Defendants were never present at the Plaintiff's home. (Ex. E, Ward aff. ¶ 13; Ex. F, Rowe aff. ¶ 20; Ex. G, Weeks aff. ¶ 7.)

**C.     Medical Claim**

The Geneva County, Alabama Sheriff's Department operates the Geneva County Detention Facility pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Ex. E, Ward aff. ¶ 5; Ex. F, Rowe aff. ¶ 5.) It is the

policy of the Geneva County, Alabama, Sheriff's Department that all inmates confined in the Geneva County Detention Facility be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained.  All medical care rendered to inmates in the Geneva County Detention Facility is delivered under the direction of a licensed health care practitioner. It is departmental policy that no member of the jail staff, or any other Sheriff's Department employee, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services.  All judgments regarding the necessity of medical treatment are left to a licensed health care practitioner.  (Ex. E, Ward aff. ¶ 6; Ex. F, Rowe aff. ¶ 6.)

It is the policy of the Geneva County Sheriff's Department that all inmates incarcerated in the Geneva County Detention Facility be allowed to request health care services at any time. Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency care from state or county inmates must be submitted in writing.  Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action to see that those requests are dealt with in a prompt and appropriate manner.  Inmates with non-emergency medical problems are taken to see Dr. O.D. Mitchum in Geneva, Alabama.  Inmates who have an emergency medical problem are taken to the Emergency Room for treatment.  (Ex. E, Ward aff. ¶ 7; Ex. F, Rowe aff. ¶ 7.)  When a member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the responsibility of the on duty jailer or matron. It is then the on duty jailer or matron's responsibility to make an appointment for the inmate with an appropriate health care provider.  Any doubt as to whether an actual need exists for medical treatment is resolved in favor of the inmate, with medical services being offered.  All requests of

an emergency nature are handled immediately.  (Ex. E, Ward aff. ¶ 8; Ex. F, Rowe aff. ¶ 8.)  It is

the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva

County Detention Facility be entitled to safe and accurate dispensation and administration of

prescription and nonprescription medication.  All medication prescribed for an inmate by a

health care provider during the time of an inmate's incarceration is obtained by the Sheriff's

Department and distributed according to the doctor's directions.  When distributing medications,

members of the jail staff complete a medication log, which records the inmate's name, the

medication, the date and time it was delivered, the initials of the officer delivering the

medication, or supervising its delivery, and the inmate's initials or signature acknowledging

receipt. (Ex. E, Ward aff. ¶ 9; Ex. F, Rowe aff. ¶ 9.)

After Plaintiff hit his head on the wall, Deputy Mock told the jailer to call the Geneva

Rescue Squad to come check Polcastro.  By the time they arrived, he had come to and was sitting

upright in a chair.  Polcastro refused treatment three or four times and continued to be hostile.

Therefore, Mock took him to the holding cell.  (Ex. C, Mock aff. ¶ 15.)  At that time, another

Deputy went into the cell to talk with Polcastro and finally convinced him to let him take him to

the Emergency Room.  (Ex. C, Mock aff. ¶ 16.)

None of the Defendants denied Polcastro medical treatment.  (Ex. C, Mock aff. ¶ 18; Ex.

E, Ward aff. ¶ 10; Ex. F, Rowe aff. ¶ 10; Ex. G, Weeks aff. ¶ 5.)  In fact, Mock offered medical

treatment to Polcastro, and Polcastro refused.  (Ex. C, Mock aff. ¶ 19.)

Plaintiff was taken to the Wiregrass Emergency Room on August 1, 2005.  (Ex. D, Notes

dated  August 1, 2005, and August 2, 2005; Ex. H, Inmate File, Wiregrass Medical Center

Record dated August 1, 2005; Exhibit J, Medical Records from Wiregrass Medical Center dated

August 1, 2005;  Ex. F, Rowe aff. ¶ 11.)  He was taken to see O.D. Mitchum, M.D. at the

Wiregrass Medical Center on August 25, 2005.  (Ex. D, Notes dated August 23, 2005; Exhibit I, O.D. Mitchum, M.D. Record dated August 25, 2005; Exhibit J, Medical Records from Wiregrass Medical Center dated August 25, 2005; Ex. F, Rowe aff. ¶ 11)  Dr. Mitchum ordered X-Rays; therefore, Plaintiff was taken to the Hospital for X-rays.  (Exhibit J, Medical Records from Wiregrass Medical Center dated August 25, 2005; Ex. F, Rowe aff. ¶ 11.)  On August 31, 2005, Donald Weeks called Dr. Mitchum's office and learned that Plaintiff's test results were normal. (Ex. G, Weeks aff. ¶ 6; Exhibit J, Medical Records from Wiregrass Medical Center dated August 25, 2005.)

**D.    Conditions of Confinement Claims**

The Geneva County Detention Facility is subject to routine maintenance and repairs on a regular basis by the custodian.  (Ex. E, Ward aff. ¶ 11; Ex. F, Rowe aff. ¶ 12.)

All inmates, including the Plaintiff, are always provided with a mattress and bed linens for sleeping in the event that the number of inmates exceeds the number of beds at the jail. Never has the Plaintiff had to sleep on the floor without a mattress and bed linens.  (Ex. E, Ward aff. ¶ 12; Ex. F, Rowe aff. ¶ 13.)  Inmates are regularly given cleaning materials to use.  (Ex. F, Rowe aff. ¶ 14.)  Inmates are regularly given privileges such as exercise time and/or smoke breaks.  (Ex. F, Rowe aff. ¶ 15.)  All meal preparation is supervised by a Geneva County staff member.  (Ex. F, Rowe aff. ¶ 16.)

After the Plaintiff was booked into the jail, Sheriff Greg Ward only had one occasion on which he dealt with the Plaintiff.  Sheriff Ward received information from a trustee inmate that a riot was going to be started and that the Plaintiff was the ring leader.  Sheriff Ward told the inmates that this type behavior would not be tolerated and that their privileges, i.e. smoke break, etc., could be taken away for planning a riot.  Sheriff Ward brought the Plaintiff to his office and

explained that such conduct would not be tolerated. The Plaintiff denied involvement. Sheriff Ward warned him that the inmates would hold it against him if everyone got their privileges taken away because of one person's actions. Sheriff Ward's sole purpose in having this conversation with the Plaintiff was to protect the security interests of the Geneva County Detention Facility. (Ex. E, Ward aff. ¶ 15.)

> **E.    Access to Court Claim**

Inmates are given access to their attorneys as well as reasonable opportunity to use the Jail's law library. Materials for writing and mailing letters are available for purchase by inmates in the jail. (Ex. F, Rowe aff. ¶ 21.)

> **F.    Plaintiff's Noncompliance with the Grievance Procedures at the Geneva County Jail.**

Internal grievance procedures at the Geneva County Detention Facility are available to all inmates. It is the policy of the Geneva County Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have. It is further the policy and procedure of the Geneva County Detention Facility to place each such grievance in the inmate's file for a record of the same. (Ex. F, Rowe aff. ¶ 18.) None of the Defendants received a grievance from Plaintiff. (Ex. C, Mock aff. ¶ 22; Ex. E, Ward aff. ¶ 16; Ex. F, Rowe aff. ¶ 19; Ex. G, Weeks aff. ¶ 8.) Upon the Jail Administrator's review of the Plaintiff's inmate file, there is no grievance filed by the Plaintiff. Had the Jail Administrator received such a grievance, he would have followed procedures and responded to the grievance accordingly. (Ex. F, Rowe aff. ¶ 19.)

## II.     LAW

### A.     All claims by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C.A. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.**    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.**    **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Geneva County Detention Facility.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Despite the existence of internal grievance procedures at the Geneva County Detention Facility, no grievance was filed by the Plaintiff in regards to the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Geneva County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

2.    **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his complaint is due to be dismissed.

C.    **Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff, Deputy Sheriff, Jail Administrator, and Jailer, respectively, of Geneva County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had

"fair warning" that their conduct violated the Plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

officer or one who was knowingly violating the law would have done such a thing, the government

actor has immunity from suit." <u>Storck</u>, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The evidence clearly shows that Defendants have done nothing to cross any bright line of

clearly established constitutional law.  Therefore, they are entitled to qualified immunity.

### 1.    Excessive Force Claim

The seminal case regarding judicial inquiry into an excessive force claim against a prison

official was set forth in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1984) and establishes as the

appropriate query "whether force was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm."  <u>See</u> <u>Hudson v. McMillan</u>, 503 U.S. 1, 6-7 (1992).

In fact, the <u>Whitley</u> Court reasoned that:

> Corrections officers must balance the need 'to maintain or restore discipline'
> through force against the risk of injury to inmate. . . .  Prison administrators . . .
> should be accorded wide-ranging deference in the adoption and execution of
> policies and practices that in their judgment are needed to preserve internal order
> and discipline and to maintain institutional security.

<u>Id.</u> at 6 (citations omitted).  The factors to be considered in evaluating whether the use of force was

wanton and unnecessary include: 1) the need for application of force; 2) the relationship between

the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4)

any efforts made to temper the severity of a forceful response; and 5) the extent of the injury

suffered by the inmate.

In evaluating the challenged conduct of jail officials, a court must keep in mind the

paramount concerns of maintaining order and discipline in an often dangerous and unruly

environment.  <u>Ort v. White</u>, 813 F.2d 318, 322 (11th Cir. 1987).  Where the only question concerns

the reasonableness of the force used by a prison official, the defendants should be entitled to

judgment as a matter of law.

In this case Plaintiff attempted to strike Deputy Mock, and Deputy Mock, in self defense, pushed the Plaintiff away to keep the Plaintiff from hitting him. Plaintiff was charged with assault for his actions. Clearly, protecting oneself from an assault by pushing the assailant away from his person was reasonable.

The application of *de minimis* force in making an arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment. <u>Nolin v. Isbell</u>, 207 F. 3d 1253, 1256 (11th Cir. 2000). The force used by Deputy Mock in pushing the Plaintiff away as he attempted to strike him was clearly *de minimis*. In analyzing the *de minimis* use of force in Fourth Amendment claims, the Eleventh Circuit has either affirmed the grant of summary judgment based on qualified immunity or reversed the denial of qualified immunity to officers who used *more* force to effectuate an arrest than that employed by Deputy Mock in the instant case.

Finally, Plaintiff can cite no clearly established case law which would have indicated that Defendant's specific behavior—pushing the Plaintiff away from him - violated Plaintiff's constitutional rights. <u>See</u> <u>generally</u>, <u>Willingham v. Loughnan</u>, 321 F. 3d 1299, 1301 (11th Cir. 2003). Certainly, the good faith force used by Deputy Mock did not violate clearly established law.

### 2.    Medical Claim

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case Plaintiff was taken to the Emergency Room on August 1, 2005, before he was booked into the Geneva County Jail. He was taken to see Dr. O.D. Mitchum at the Wiregrass Medical Center for a follow up that same month. Dr. Mitchum ordered X-rays that were unremarkable. Clearly, the Defendants were in no way deliberately indifferent to any serious medical need of the Plaintiff. Further, after the X-rays came back normal, there was no serious medical need to which the Defendants could respond.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment,

care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[1] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, in the instant case Defendants are not medical professionals, nor are they mental health providers. Plaintiff was evaluated and treated by medical professionals at the local

---

[1] The medical director was a trained and licensed nurse. 302 F.3d at 846.

hospital. Therefore, Defendants acted within constitutional parameters, and were in no way deliberately indifferent.

### 3.    Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at

1979-80.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not."  Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives.  LaMarca, 995 F.2d at 1536.  In addition, Plaintiff must also show that Defendants had some personal involvement in the alleged deprivation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  Plaintiff cannot show that Defendants have been deliberately indifferent to conditions at the Geneva County Detention Facility. Deliberate indifference to an inmate's health or safety can only be shown if the defendants know that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825 (1994).  Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any overcrowding constituted cruel and unusual punishment.

In this case, none of the conditions of which Plaintiff complains constitutes an excessive risk to his health or safety.  Plaintiff has not shown how he has been injured as a result of any of his allegations.  Further, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendants knew of or disregarded any alleged risk. It is clear from the evidence that Defendants acted according to established lawful policies and procedures with regard to Plaintiff.  Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights.  Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful.  Therefore, Defendants are entitled to qualified immunity.

### 4.     Access to Court Claim

"[T]he fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." While *Bounds* guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (internal citations omitted).  In

Lewis v. Casey, the United States Supreme Court made it clear that, in order to prevail on a

claim that an inmate's right to access to courts has been violated, the inmate must establish

prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance

program [or other alternative provided] hindered his efforts to pursue a legal claim."  Lewis v.

Casey, 116 S. Ct. 2174 (1996).  To establish such prejudice, an inmate must "show, for example,

that a complaint he prepared was dismissed for failure to satisfy some technical requirement

which, because of deficiencies in the prison's legal assistance facilities, he could not have

known, or that he suffered arguably, actionable harm that he wished to bring before the courts,

but was so stymied by inadequacy of the law library that he was unable to even file a

Complaint."  Id.

The Plaintiff has failed to demonstrate that he was, in any way, prejudiced, in any manner

whatsoever, in any court where he has had criminal or civil matters pending.  For his criminal

charges, he has access to an attorney.  For the instant civil matter, it is obvious that Plaintiff was

able to file his Complaint with this Court.  The Plaintiff has not alleged any facts sufficient to

maintain a claim that he suffered a constitutional deprivation due to any alleged denial of access to courts, based on any alleged deficiencies at the Geneva County Detention Facility.

**D.    Plaintiff has failed to allege personal involvement as required by 42 U.S.C. §1983.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

**1.    There is no evidence of personal involvement.**

**a.    Excessive Force Claim**

Plaintiff has not shown that Defendants Ward, Rowe, and Weeks were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning his excessive force claim. There are absolutely no facts -- in fact, the Complaint is completely devoid of any claim against Defendants -- to show that the Defendants personally participated in this claim, nor does the Plaintiff allege specifically how the Defendants violated his constitutional rights to be free from the use of excessive force. As such, Plaintiff's claims against these Defendants are due to be dismissed.

**b.    Claim that Money was Stolen**

The evidence shows that none of the Defendants were involved in allegedly stealing Plaintiff's money. In fact, by the time Deputy Mock arrived at Plaintiff's home, Plaintiff had already been arrested. Deputy Mock was never in the possession of any money that was allegedly taken from Plaintiff's home. Further, Plaintiff does not even allege that any of the

other Defendants were personally involved.  Because none of the Defendants had any personal involvement in the alleged theft of Plaintiff's money, this claim is due to be dismissed.

### c.    Medical Claim

Plaintiff has not alleged that Sheriff Ward was in any way personally involved in any alleged denial of medical care.  Therefore, because Sheriff Ward did not have any personal involvement in the alleged denial of medical care, this claim is due to be dismissed.

### d.    Conditions of Confinement Claims, Threats, and Access to Court Claims

Plaintiff has not alleged that Donald Weeks or Ray Mock were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement, threats, or access to courts.  Plaintiff has offered no allegation demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Defendants-- to show that the Defendants personally participated in these claims, nor does the Plaintiff allege specifically how the Defendants violated his constitutional rights.  As such, these claims are due to be dismissed.

### 2.    There is no respondeat superior liability under 42 U.S.C. § 1983.

To the extent that Plaintiff's claims against Sheriff Ward and Carl Rowe are an attempt to hold them liable under a *respondeat superior* theory, his claims must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*.  Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

E.     **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[2]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff John P. Polcastro, Sr., in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully request that this Honorable Court treat their Special Report as a

Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 29th day of November, 2005.

> **s/C. Richard Hill, Jr.**
> C. RICHARD HILL, JR. Bar No. HIL045
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of November, 2005, I have served the foregoing
document on the following:

> John P. Polcastro, Sr.
> Geneva County Jail
> PO Box 115
> Geneva, AL 36340

by placing a true and correct copy of the foregoing in the U.S. Mail, postage prepaid, on this the
29th day of November, 2005.

> **s/C. Richard Hill, Jr.**
> OF COUNSEL