# Exhibit A

# Arrest Report dated August 1, 2005.

Case 1:05-cv-00909-MEF-WC   Document 9-2   Filed 11/29/2005   Page 1 of 19

# ALABAMA UNIFORM ARREST REPORT

Fingerprinted: ☒ Yes ☐ No
R84 Completed: ☒ Yes ☐ No

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

## IDENTIFICATION

- **1 ORI #:** 0340200
- **2 AGENCY NAME:** SAMSON POLICE DEPARTMENT
- **3 CASE #:**
- **4 SFX:**
- **5 LAST, FIRST, MIDDLE NAME:** POLCASTRO, JOHN PHILIP
- **6 ALIAS AKA:**
- **7 SEX:** ☒ M
- **8 RACE:** ☒ W
- **9 HGT:** 5'7"
- **10 WGT:** 202
- **11 EYE:** GRN
- **12 HAIR:** BRN
- **13 SKIN:** MED
- **15 PLACE OF BIRTH:** Italy Flaamo
- **17 DATE OF BIRTH:** 05/02/53
- **18 AGE:** 52
- **19 MISCELLANEOUS ID #:** 422-475-53-16

## ARREST

- **33 LOCATION OF ARREST:** WEST WASHINGTON STREET
- **35 ARRESTED FOR YOUR JURISDICTION?:** ☒ YES
- **36 CONDITION OF ARRESTEE:** ☒ DRUNK
- **37 RESIST ARREST?:** ☒ NO
- **38 INJURIES?:** ☒ NONE
- **39 ARMED?:** ☒ N
- **41 DATE OF ARREST:** 08/01/05
- **42 TIME OF ARREST:** (MIL)
- **43 DAY OF ARREST:** M
- **44 TYPE ARREST:** ON VIEW
- **45 ARRESTED BEFORE?:** UNKNOWN
- **46 CHARGE-1:** ☒ MISD — PUBLIC INTOX
- **48 CHARGE-2:** ☒ FEL — ARSON
- **56 CHARGE-3:** ☒ MISD — CRIMINAL MISCHIEF
- **58 CHARGE-4:** ☒ MISD — DISORDERLY CONDUCT
- **66 ARREST DISPOSITION:** ☒ HELD
- **67 IF OUT ON RELEASE WHAT TYPE?:** County Jail
- **68 ARRESTED WITH ACCOMPLICE:** N/A

## RELEASE

- **91 DATE AND TIME OF RELEASE:** 08/01/05 (MIL)
- **92 RELEASING OFFICER NAME:** ANNETTE SHANE
- **93 AGENCY/DIVISION:** SAMSON P.D.
- **94 ID #:** 20

- **111 ARRESTING OFFICER:** ANNETTE SHANE
- **113 ARRESTING OFFICER:** KERSEY, TRACY

# Exhibit B

# Booking Sheet dated August 1, 2005

# GENEVA COUNTY JAIL
## BOOKING SHEET

#20

Probation Check _____
Warrant Book _____

Date 8-1-05            Time 10:04 PM
Name Polcastro John Phillip
       (LAST)     (FIRST)     (MIDDLE)

Alias _____

Date of Arrest 8-1-05            Social Security No. 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
Race W     Sex M     Age 52     Eyes Green    Hair Brown
Ht. 5'7"    Wt. _____    DOB 5-2-53    Photo _____    F.P. _____
Address 405 W Washington St, Samson, AL
       (STREET)  (APT.)  (CITY)  (STATE)  (ZIP)

Telephone _____        I.D. No. _____
NCIC Check _____
Next of Kin _____        Relationship _____
Address _____
       (STREET)  (APT.)  (CITY)  (STATE)  (ZIP)

Charge Public Intox Bond ___    Charge Disorderly Conduct Bond ___
Charge Arson 2 Bond ___          Charge Resisting Arrest Bond ___
Charge Crim Mischief Bond 2      Charge 2d C-nvicted Felony
TOP 2nd  2,500                                        3,000.00

ARRESTING OFFICER Shane Renoite
                  (PLEASE PRINT)

Signature _____
AGENCY                Samson
BOOKING OFFICER       Marilyn
                      (PLEASE PRINT)

RELEASE INFORMATION

I have received all properties taken from me by the Geneva County Sheriff's Department.

_____
Signature of Person Released

Date of Release _____    Time _____    Type of Release _____

_____
Signature of Releasing Officer

P.O.E. ___                    WARRANT # 2005-000718-00
OCCUPATION ___                WARRANT # _____
P.O.B. Italy                  WARRANT # _____
HOLD ~~Geneva Co~~            WARRANT # _____

# BOOKING SHEET

Inmate Name _____ Date _____ Time _____

HEALTH SCREENING FORM

1. Have you ever had or been treated for: (mark box if answer is yes)

   - ☐ a. Asthma
   - ☐ b. Heart Trouble
   - ☐ c. Hypertension
   - ☐ d. Diabetes
   - ☐ e. Epilepsy or Seizure
   - ☐ f. Drug Addiction
   - ☐ g. Alcoholism
   - ☐ h. Mental Illness
   - ☐ i. Venereal Disease
   - ☐ j. Tuberculosis
   - ☐ k. Ulcer
   - ☐ l. Faintly of recent head injury
   - ☐ m. Hepatitis

   If any response was yes, please explain and give date of last treatment._____
   _____
   _____
   _____

2. Are you allergic to anything? __YES__ If yes, what? __IODINE (FOOD) FISH NO TYPE OF FISH__

3. Have you ever been determined to be HIV positive? __NO__ If yes, when? _____

4. Are you currently taking any prescription medication? __NO__ If yes, what? _____
   _____ For what? _____

5. Does the inmate require a special diet prescribed by a physician? __NO__ If yes, what?_____
   _____ For what? _____

6. Do you have any other medical or mental problem we should know about? __NO__ If yes, what?____

# GENEVA COUNTY JAIL

I, _____, HAVE BEEN ADVISED BY THE JAILER OF THE FOLLOWING;

ALL PROPERTY BROUGHT ON TO THE JAIL PREMISES ARE SUBJECT TO SEARCH BY AUTHORIZED PERSONNEL FOR WEAPONS AND CONTRABAND

ALL INCOMING AND OUTGOING MAIL MAY BE CENSORED EXCEPT FOR CORRESPONDENCE WITH COURT OFFICIALS

X _____    DATE  08, 02, 05
INMATE SIGNATURE

_____    DATE  08, 02, 05
JAILERS SIGNATURE

# BOOKING SHEET

Inmate Name _____ Date _____ Time _____

1. Check One:

   _____ This inmate was cooperative in responding to the above questions and allowing me to observe him.

   _____ This inmate refused or was unable to cooperate and refused to answer my questions concerning his medical history and/or potential for suicide. Reason for inability:

   _____

   _____

2. I certify that I have today observed inmate _____, asked him/her the questions listed on the Geneva County Jail's Booking Sheet, and accurately recorded my observation and his/her responses.

   _____
   Signature of Booking Officer

   Date: _____

   Time: _____

# Exhibit C

# Affidavit of Ray Mock

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JOHN P. POLCASTRO, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:05-cv-00909-MEF-VPM ) |
| GREG WARD, et al., | ) ) |
| Defendants. | ) |

**AFFIDAVIT OF RAY MOCK**

| | |
|---|---|
| STATE OF ALABAMA | ) ) |
| COUNTY OF GENEVA | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ray Mock, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Ray Mock. I am over the age of nineteen and competent to make this affidavit. I am currently employed at the Geneva County Sheriff's Department as a Deputy Sheriff for the Geneva County Sheriff's Department.

2. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

3. On August 1, 2005, I was dispatched by 9-1-1 to assist the Samson Police Department on Washington Street in Samson, Alabama.

4. Upon arrival I saw a white male in the back of the Samson Police Department car which I later learned to be John Philip Polcastro.

5. The left side window of the Police car had been knocked out. The Samson Police informed me that Polcastro had kicked the window out.

6. Polcastro was cursing and yelling. He was bleeding. His hands were handcuffed behind his back, and his legs were tied with a strap.

7. The Samson Police informed me that Polcastro had tried to set fire to a house by lighting a fire with gasoline at the natural gas unit that led into the trailer.

8. I told the Samson Police that I would transport Polcastro to the Geneva County Detention Facility for them.

9. At that point, Polcastro seemed to have clamed down, so I asked the Samson Police to remove the straps from his legs.

10. However, about one mile out of Samson, Polcastro started kicking my window. Therefore I pulled over into the Samson Armory Parking lot.

11. I located some leg cuffs to put on Polcastro, but before I could get them on, Polcastro had kicked out the right back window of my Sheriff's Department vehicle.

12. When we arrived at the Geneva County Detention Facility, I brought Polcastro in the booking room and removed the cuffs. However, Polcastro was still being very hostile and belligerent.

13. The jailer on duty told Polcastro to go into the holding cell, but Polcastro refused. Polcastro put his hands on me and pushed me and began to try to hit me. Therefore, I pushed him off of me. Polcastro hit the wall knocking himself out.

14. I told the jailer to call the Geneva Rescue Squad to come check Polcastro. By the time they arrived, he had come to and was sitting upright in a chair. Polcastro refused treatment three or four times and continued to be hostile. Therefore, I took him to the holding cell.

15. At that time, another Deputy went into the cell to talk with Polcastro and finally convinced him to let him take him to the Emergency Room.

2

16. I followed all the policy and procedure of the Geneva County Sheriff's Department.

17. I used only the minimal amount of force necessary to protect myself from the assault committed against me by Polcastro.

18. I did not deny Polcastro medical treatment. In fact, I offered medical treatment to Polcastro, and he refused.

19. I was never in the possession of any cash money that was allegedly taken from Plaintiff's home.

20. He was charged with assault in the third degree for his assault on me.

21. I have not received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

22. I swear to the best of my present knowledge and information that the above statements are true; that I am competent to make this affidavit; and, the above statements are made by drawing from my personal knowledge of the situation.

_____
RAY MOCK

SWORN TO and SUBSCRIBED before me this 29 day of November, 2005.

_____
NOTARY PUBLIC
My Commission Expires: 8/1/09

3

# Exhibit D

# Prison's Activity Sheet
# Notes dated August 2, 2005

**GENEVA COUNTY JAIL**
Prisoner's Activity Sheet

| DATE | Prisoner's Name: John Phillip Pollastro |
|---|---|
| 8-1-05 | Subject was brought in by 3403 for Samson. The subject was bleeding & very disorderly cussing the deputy. So I told him to go to H/C, when he got up he pushed 3403 & tried to hit him, 3403 shoved him, he hit the wall & was knocked out. We called 911, when they got here he refused any medical help & cussed us all out. We got him in H/C, and 3413 came in & talked him into going to ER. 3403 said to book him in on Samson charges for now, with County charges comming. |
| 8-2-05 | Subject bought back from Wiregrass Emergency Room by 3413 Has SuroBond on left upper eye brow, also has scratches on head and drew blood sample. |
| 8-2-05 | JUDGE SET BONDS   ~~~~~  NEED 1ST |
|  | ARSON 2ND 25,000.00 |
|  | ASSAULT 3RD 1,000.00 |
|  | CRIMINAL MISCHIEF 3RD x2 1,000.00 EACH |

# GENEVA COUNTY JAIL
## Prisoner's Activity Sheet

| DATE | Prisoner's Name: |
|---|---|
| 8-2-05 | DISORDERLY CONDUCT 1,000.00 |
| | PUBLIC INTOX 1,100.00 |
| | 2 TIME CONVICTED FELONY 1,000.00 |
| | Tot. $32,000.00 |
| 8-2-05 | Finger Prints do everything |
| | 10-4. move RTS Send The up to S(a) |
| 8-3-05 | 1st Ap Bond Stay the Same. |
| 8-22-05 | Ap at 1:30 p - OR Mitchum Ax. OK BTA |
| 8-23-05 | Subject was served with warrant for TOP 2nd Bond 2,500.00 had 1st AP This DAY - |
| 8-26-05 | Had 1st on latest charge. TOP 2nd - 2500.00 |
| 8/31/05 | Called OD Mitchum. |
| 8-31-05 | DR. MITCHUM OFF, CALLE EVERYTHING ALRIGHT |

# Exhibit E

# Affidavit of Sheriff Greg Ward

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JOHN P. POLCASTRO, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05-cv-00909-MEF-VPM |
| | ) |
| GREG WARD, et al., | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT OF GREG WARD

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF GENEVA | ) |

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Greg Ward, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Greg Ward. I am over the age of nineteen and competent to make this affidavit. I am the duly elected Sheriff of Geneva County, Alabama.

2. I am familiar with the Plaintiff due to his being incarcerated in the Geneva County Detention Facility. I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. The Geneva County, Alabama Sheriff's Department operates the Geneva County Detention Facility pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house

and at certified training programs and academics regarding all aspects of their jobs, including the administration of medical care to inmates.

5. It is the policy of the Geneva County, Alabama Sheriff's Department that all inmates confined in the Geneva County Detention Facility be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Geneva County Detention Facility is delivered under the direction of a licensed health care practitioner. It is departmental policy that no member of the jail staff, or any other Sheriff's Department employee, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services. All judgments regarding the necessity of medical treatment are left to a licensed health care practitioner.

6. It is the policy of the Geneva County Sheriff's Department that all inmates incarcerated in the Geneva County Detention Facility be allowed to request health care services at any time. Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency care from state or county inmates must be submitted in writing. Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action to see that those requests are dealt with in a prompt and appropriate manner. Inmates with non-emergency medical problems are taken to see Dr. O.D. Mitchum in Geneva, Alabama. Inmates who have an emergency medical problem are taken to the Emergency Room for treatment.

7. When a member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the responsibility of the on duty jailer or matron. It is then the on duty jailer or matron's responsibility to make an

2

appointment for the inmate with an appropriate health care provider. Any doubt as to whether an actual need exists for medical treatment is resolved in favor of the inmate, with medical services being offered. All requests of an emergency nature are handled immediately.

8. It is the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva County Detention Facility be entitled to safe and accurate dispensation and administration of prescription and nonprescription medication. All medication prescribed for an inmate by a health care provider during the time of an inmate's incarceration is obtained by the Sheriff's Department and distributed according to the doctor's directions. When distributing medications, members of the jail staff complete a medication log, which records the inmate's name, the medication, the date and time it was delivered, the initials of the officer delivering the medication, or supervising its delivery, and the inmate's initials or signature acknowledging receipt.

9. I have never denied necessary medical care or treatment to Plaintiff or any other inmate.

10. The Geneva County Detention Facility is subject to routine maintenance and repairs on a regular basis by the custodian.

11. All inmates, including the Plaintiff, are always provided with a mattress and bed linens for sleeping in the event that the number of inmates exceeds the number of beds at the jail. Never has the Plaintiff had to sleep on the floor without a mattress and bed linens.

12. I was never in the possession of any cash money that was allegedly taken from Plaintiff's home, nor was I ever present at Plaintiff's home.

13. It is the policy of the Geneva County Sheriff's Department that only the minimal amount of force necessary will be used on an arrestee or inmate.

14. After the Plaintiff was booked into the jail, I only had one occasion on which I dealt with the Plaintiff. I received information from a trustee inmate that a riot was going to be started and that the Plaintiff was the ring leader. I told the inmates that this type behavior would not be tolerated and that their privileges, i.e. smoke break, etc., could be taken away for planning a riot. I brought the Plaintiff to my office and explained that such conduct would not be tolerated. The Plaintiff denied involvement. I warned him that the inmates would hold it against him if everyone got their privileges taken away because of one person's actions. My sole purpose in having this conversation with the Plaintiff was to protect the security interests of the Geneva County Detention Facility.

15. I have not received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

16. I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
GREG WARD

SWORN TO and SUBSCRIBED before me this 22 day of November, 2005.

_____
NOTARY PUBLIC
My Commission Expires: 8/1/09

4